IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**INGRID REYES PEREZ**
    **Plaintiff,**
    v.
**SCOTIABANK OF PUERTO RICO, et al.**
    **Defendants.**

Civil Action No. 08-2326 (GAG)

**OPINION AND ORDER**

Plaintiff Ingrid Reyes Perez ("Plaintiff") commenced this action seeking recovery for alleged discriminatory actions taken against her by her employer, ScotiaBank of Puerto Rico ("Scotiabank" or "Defendant"), relating to her pregnancy. Plaintiff's claims are made pursuant to the Pregnancy Discrimination Act ("PDA"), 29 U.S.C. § 2000e-(k); Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. §§ 2000e et seq.; as well as Puerto Rico's Law No. 3 of March 13, 1942 ("Law No. 3"), P.R. Laws Ann. tit. 29, § 467 et seq., and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 & 1803"), P.R. Laws Ann. tit. 31, §§ 5141, 5142.

This matter is presently before the court on Scotiabank's motion for summary judgment (Docket No. 24). Plaintiff timely opposed Defendant's motion for summary judgment (Docket No. 35). After reviewing the pleadings and pertinent law, the court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment.

**I.**     **Standard of Review**

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

**Civil No. 08-2326(GAG)**                               2

'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Factual & Procedural Background**

Plaintiff was hired by Scotiabank as a part-time teller in its Manati branch on September 6, 2005. On November 7, 2005 Plaintiff was transferred to the Plaza Bayamon Branch. Once transferred, Plaintiff continued in her position as a part time teller. At some point in 2006, while working at the Plaza Bayamon branch, Plaintiff became pregnant. During her pregnancy, Plaintiff suffered from a medical condition known as *hyperemesis gravidarum*, which forced her to take medical leave from May 31, 2006 until September 4, 2006. She returned to work on September 5, 2006. During the second trimester of her pregnancy, Plaintiff encountered further complications with her pregnancy, which ultimately forced her to terminate her pregnancy. As a result, Plaintiff took a maternity leave of eight (8) weeks starting on September 19, 2006.

On April 26, 2007, Plaintiff responded to an internal job posting for a transfer to the Hato Rey Branch. Plaintiff was interviewed by Emma Colon ("Colon"), the Assistant Manager of the Hato Rey Branch. A week and a half later, Plaintiff was diagnosed with molar pregnancy for which

**Civil No. 08-2326(GAG)**                                                3

she had to undergo surgery. Following her surgery, Plaintiff took a medical leave from May 8, 2007 until May 21, 2007. At some point in May of 2007, Plaintiff received an Award for Excellence from Scotiabank's Bayamon Branch Manager. On May 30, 2007, a week after her return to work, Plaintiff was selected and promoted to the position of full-time cashier in the Hato Rey Branch. Her new position became effective on June 11, 2007.

Plaintiff was transferred to the Hato Rey Branch on July 17, 2007. Following her transfer she received a series of disciplinary notes. On July 17, 2007, Colon gave Plaintiff a disciplinary note for tardiness and for her poor attendance record between June 14, 2007 and July 16, 2007. On July 21, 2007, Plaintiff received a disciplinary note for failing to put a hold on a "new account" deposit. Following this incident, Plaintiff had a meeting with her superiors on July 23, 2007. Present at this meeting was Plaintiff's immediate supervisor, Colon; the Hato Rey Branch Manager, Edwina Rosario Rivera ("Rosario"); and a Human Resources Representative, Rebecca Rodriguez ("Rodriguez"). While both Plaintiff and Defendant agree that this meeting occurred, their accounts of the events differ. Plaintiff testifies that at this meeting she informed Colon, Rosario, and Rodriguez that she was pregnant and that because of her past medical complications, she may have to attend many doctor's appointments in the near future. She further testifies that during this meeting she informed her three superiors that her physician does not work on Saturdays and Sundays. In response, Colon allegedly stated "Why do you do [*sic*] not change physicians?" (See Docket No. 37-2 at 14, 21-22.) Defendants, on the other hand, contend that no such conversation took place at the July 23rd meeting. Instead, Defendants aver that the conversation at the meeting dealt solely with Plaintiff's placement in a Performance Improvement Program.

On July 26 and 27, 2007, Plaintiff contacted Colon at the office informing her that she was going to be absent from work. Plaintiff contends that during this call she reiterated that her absence was due to the fact that she was ill as a result of complications with her pregnancy. She further allegedly stated that she had been vomiting since the 24th and was unable to see her physician, who was out until the 31st. She also claims she told Colon that if "this was what [she] had during

**Civil No. 08-2326(GAG)**                                   4

previous pregnancies then the most sure thing [sic] was that [she] would be absent for several days." (See Docket No. 37-2 at 17, l. 9-12.) On the days following this conversation, Plaintiff avers that she attempted several times to contact Colon at the bank but was unable to reach her. She instead spoke to an unidentified senior teller, whom she informed that she was going to send a medical certificate specifying that she would be able to return to work on August 7, 2007. Plaintiff states that the next time she spoke with Colon was on August 13, 2007. In stark contrast to Plaintiff's assertions, Defendant contends that Plaintiff was absent from work from July 30, 2007 until August 7, 2007 without Scotiabank receiving any communication from her at all.

Plaintiff testified at her deposition that on August 1, 2007, her mother, Providencia Perez, sent a medical certificate via fax to the Hato Rey Branch informing her employer of her pregnancy. Defendants contend they never received said fax. On August 7, 2007, Scotiabank sent a certified letter to Plaintiff inquiring about her absences without notice from July 27, 2007 until August 7, 2007 and her failure to contact Scotiabank. The letter stated "We have decided to terminate your employment today, August 7, 2007." (See Docket No. 40-12 at 1)  The letter also stated that Plaintiff would be provided three (3) additional days upon receipt of the letter to submit evidence justifying her absenteeism. Plaintiff alleges that in response to this request, she sent a medical certificate via fax which excused her absence from work from the 8th to the 12th of August, because of health issues related to her pregnancy.

On August 13, 2007, while Plaintiff was at the hospital for an emergency related to her pregnancy, her mother received a letter terminating Plaintiff's employment. Plaintiff was not admitted to the hospital on this date because her medical insurance had been cancelled on August 1, 2007. Later that day, Plaintiff called Colon who transferred the call to the Assistant Vice President of Human Resources, Maria Teresa Ayala ("Ayala"). Defendants allege this is the first that they had heard about Plaintiff's pregnancy. Defendants contend that during this conversation Ayala asked Plaintiff to provide evidence corroborating her justification for her absences.

On August 13, 2007, after having this conversation with Plaintiff, Ayala met with Rodriguez

**Civil No. 08-2326(GAG)**                                              5

and had a telephone conversation with Rosario and Colon, all of whom denied having any knowledge of Plaintiff's pregnancy.[1] On August 17, 2007, Ayala sent another letter to inform Plaintiff that Scotiabank had not received any documentation or communication since their telephone conversation on August 13th. Plaintiff was given another chance to present the documentation and evidence about her pregnancy in order for Scotiabank to re-evaluate the decision to terminate her employment. The letter stated that if the documents were not received by Friday, August 24, 2007, her termination would remain in effect.

On August 22, 2007, Plaintiff visited the office of Dr. Daisy Vasquez Bubeau to request a copy of her medical record. On August 23, 2007, Plaintiff went to the Scotiabank offices to sign her C.O.B.R.A. (Consolidated Omnibus Budget Reconciliation Act) documents. Plaintiff testifies that during this visit she handed her medical documents to the benefits officer, Ms. Adanyl Padilla ("Padilla"). Padilla testified at her deposition that she does not recall having received medical certificates from Plaintiff on that date. She further testified that she did not recall seeing Plaintiff at Scotiabank on the 23rd, a fact that is uncontested by both parties.

**III.    Discussion**

    *A.    PDA Claim*

Defendants allege that Plaintiff has failed to demonstrate sufficient evidence to create a material issue of fact with regard to a number of elements of her claim under the PDA.

Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against any individual on the basis of "race, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act of 1978 added pregnancy, childbirth, and related medical

---

[1] Contrary to Defendant's uncontested fact in this regard (see Docket No. 25 at 9, ¶ 55), Colon denied having any knowledge of Plaintiff's pregnancy until her deposition, which was taken on June 11, 2009 (See Docket No. 37-4 at 7, l. 10-11); Rodriguez denied having any knowledge of Plaintiff's pregnancy until the complaint arrived sometime in January of 2009 (See Docket No. 37-6 at 3, l. 8); and Rosario denied knowledge of Plaintiff's pregnancy until counsel for Scotiabank called her for her deposition. (See Docket No. 37-5 at 7, l. 2-3).

**Civil No. 08-2326(GAG)**                                  6

conditions as conditions constituting a protected class for purposes of sex discrimination under Title VII. See Gonzalez v. Biovail, 356 F. Supp. 2d 68, 78 (D.P.R. 2005). Title VII claims, in which a plaintiff is unable to demonstrate direct evidence of discrimination, follow the McDonnell Douglas burden shifting analysis. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a pregnancy discrimination claim under Title VII, a plaintiff must demonstrate: 1) that she is a member of a protected class; 2) that she was qualified for the position and performed her job satisfactorily; 3) that her employer took an adverse employment action against her; and 4) that her employer treated non-pregnant employees differently. See Gorski v. New Hampshire Dept. Of Corrections, 290 F.3d 466, 474-75 (2002). After establishing the *prima facie* case, the burden of production shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse employment decision. See Hicks, 509 U.S. at 506-07. If the employer does so, the burden of production then returns to the plaintiff, who must then make a showing that the defendant's explanation was merely pretext and that the real reason for the adverse action was discrimination based on her pregnancy. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir.1999).

In their motion for summary judgment, Defendants aver that Plaintiff has failed to establish three out of the four prongs that are necessary to formulate a *prima facie* case of pregnancy discrimination. Defendants allege that 1) Plaintiff does not belong to the protected class, 2) that she was not qualified for the position, and 3) that there is no evidence that other similarly situated employees outside of her protected class were treated more favorably.

### 1.     Membership in Protected Class

Defendants allege that, although Plaintiff may have been pregnant during the period when the adverse employment action occurred, she does not fall into the protected class, as the individuals who were responsible for the decision to terminate Plaintiff's employment were unaware that she was pregnant at the time the decision was made. Defendants contend that the presumption of discrimination, central to the Mcdonnel Douglas burden shifting analysis, cannot arise if the decision makers had no knowledge that Plaintiff was part of the protected class.

**Civil No. 08-2326(GAG)**                                                                 7

Defendants cite to the Supreme Court's decision in <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44 (2003), to support their contentions, however, this precedent does not speak to the central issue that must be addressed for purposes of ruling on Defendants' motion for summary judgment. The Court in <u>Raytheon</u> noted in a footnote that, because the decision maker testified that she was unaware of the plaintiff's disability at the time she made her determination, he could not have been subject to disparate treatment based on his disability. <u>See id.</u> at 55 n.7. While such precedent offers guidance on the disparate treatment standard, it does not end the court's summary judgment analysis in this case. Instead, the central issue here is whether Plaintiff has proffered sufficient evidence to raise a material question as to whether Plaintiff had, in fact, informed the decisionmakers that she was pregnant. See <u>Geraci v. Moody-Tottrup, Intern., Inc.</u>, 82 F.3d 578, 581 (3rd Cir. 1996) ("[i]f the pregnancy is not apparent . . . [the plaintiff] must allege knowledge and present . . . evidence from which a rational jury could infer that the employer knew that she was pregnant.")

In her opposition (Docket No. 38), Plaintiff avers that she has satisfied this requirement through her proffered deposition testimony, in which she testifies that on multiple occasions she informed the decision makers of her pregnancy prior to their decision to terminate her employment. (<u>See</u> Docket No. 37-2 at 12, l. 3-23; at 14, 1.1-25.; at 15, l. 1- 15; at 17, l. 6-12; at 24, l. 1-12.; Docket No. 37-2 at 5, l. 7-10.) In their reply (Docket No. 47) Defendants allege that such evidence is insufficient to create a triable issue of fact with regard to whether or not Plaintiff had in fact informed her superiors of her pregnancy. The court disagrees with Defendants' contentions on this matter. As there is no documentary evidence either demonstrating or negating Plaintiff's superiors' knowledge of her pregnancy, both parties rely upon deposition testimony to support their claims. In order to conclude, as Defendants would have the court do, that Plaintiff has presented no evidence demonstrating her superiors' knowledge of her pregnancy, the court would be forced to disregard the Plaintiff's sworn testimony, thereby assessing her credibility as a witness. Such an assessment is not currently in the province of the court. See <u>Che v. Massachusetts Bay Trans. Authority</u>, 342 F.3d 31, 39 (1st Cir. 2003) ("Ultimately, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

**Civil No. 08-2326(GAG)**                                    8

judge.'"(quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000))). Viewing the evidence in a light most favorable to the non-moving party, the court holds that a reasonable jury could find Plaintiff's testimony to be more credible than those of her superiors. Therefore, the court must submit the question of whether Plaintiff's superiors were informed of her pregnancy to the jury. Accordingly, the court **DENIES** summary judgment with respect to Defendants' claim that Plaintiff has failed to demonstrate the first prong of a *prima facie* case of sex discrimination.

### 2. Qualified for the Position of Teller

Defendants further aver that Plaintiff is unable to establish a *prima facie* case of pregnancy discrimination because she is unable to demonstrate that she was qualified for the position of teller. "Scotiabank terminated Plaintiff's employment on August 7, 2007, solely based on the fact that Plaintiff had missed seven (7) consecutive days of work without proper notification and justification, which constituted abandonment of her job functions." (<u>See</u> Docket No. 26 at 20). However, in making this assertion, Defendants overlook the contested issue of whether or not Plaintiff had, in fact, justified the reasons for her absence prior to her dismissal. If a reasonable jury were to find Plaintiff's testimony credible, they may also infer from the superiors' contradictory statements that Defendants' reason for Plaintiff's termination was pretextual. As Defendant's proffered reason for Plaintiff's disqualification of her position is a contested issue of material fact, the court **DENIES** summary judgment as to whether or not Plaintiff was qualified for the position of teller.

### 3. Inference of Unlawful Discrimination

Defendants aver that Plaintiff has failed to present evidence demonstrating the last prong of a *prima facie* case of pregnancy discrimination; an inference of unlawful discrimination. According to First Circuit case law, a complainant may satisfy this fourth prong by showing "that the employer had a continued need for 'someone to perform the same work after [the complainant] left.'" <u>Alvarez Cabrera v. Trataros Const. Inc.</u>, 184 F. Supp. 2d 149, 152 (D.P.R. 2002) (quoting <u>Cumpiano v. Banco Santander Puerto Rico</u>, 902 F.2d 148, 155 (1st Cir. 1990)). Contrary to Defendants assertions, Plaintiff has demonstrated this in Fact # 27 of her Statement of Additional Uncontested Facts. (<u>See</u> Docket No. 37 at 4, ¶ 27.) In their reply, Defendants admitted this uncontested fact.

**Civil No. 08-2326(GAG)**                                    9

(See Docket No. 42 at 6, ¶ 27.)  As there is no contested issue of fact with regard to this fourth and final element, the court **DENIES** summary judgment with respect to Defendant's allegations that Plaintiff has failed to establish a *prima facie* case of pregnancy discrimination.

### 4.    Legitimate Non-Discriminatory Reason for Termination

Defendants contend that even if Plaintiff has sufficiently pled a prima facie of pregnancy discrimination, her claim still fails under the second step of the McDonnel Douglass burden shifting analysis.  Once Plaintiff has established her prima facie case, the burden of production shifts to the employer to proffer a legitimate non-discriminatory reason for the employee's discharge.  See Hicks, 509 U.S. at 506-07.  In meeting this burden, Defendants have proffered, as reasons for Plaintiff's discharge, her unexcused and unjustified absences on seven (7) consecutive days of work.  While Plaintiff does not contest that she was absent, she does present evidence that on numerous occasions she did, in fact, justify these absences.  While the issue as to whether Plaintiff's absences were notified and justified will ultimately be left for the jury to decide, the court will assume for purposes of answering this motion that Defendants have met their burden of production and will therefore move onto the final step of the McDonnel Douglas analysis; whether Plaintiff has provided evidence that would allow the jury to infer that Defendants' proffered reason for the discharge was pretextual.  See Thomas, 183 F.3d at 56.

### 5.    Pretext

Plaintiff bears the ultimate burden of establishing that her employer's stated reason for her dismissal was a pretext for discriminatory animus.  "An employee can establish pretext 'by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.'" Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 37 (1st Cir. 2010) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000).  "Evidence that the employer's stated reasons are pretextual can be sufficient for a jury to infer discriminatory animus." Che, 342 F.3d at 39.  A plaintiff can also demonstrate pretext by showing that decisionmakers, or those in a position to influence decisionmakers, made discriminatory

**Civil No. 08-2326(GAG)**                         10

comments. See Santiago-Ramos, 217 F.3d at 56.

The First Circuit has warned that "trial courts should use restraint in granting summary judgment where discriminatory animus is in issue" See Hodgens v. General Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998) (internal quotations omitted) (recognizing that courts must be "particularly cautious" when granting summary judgment based on the issue of pretext). However, this caution does not preclude the court from granting summary judgment on the issue of intent. See id. "'If the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation,' summary judgment may be appropriate even where intent is an issue." Id. (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir.1994)).

Plaintiff proffers the following evidence to demonstrate that Defendants' stated reason for discharge was merely pretext for discriminatory intent. When Plaintiff allegedly informed her superiors (Colon, Rodriguez, and Rosario) of her pregnancy on July 23, 2007, she also informed them that her doctor does not work on Saturdays and Sundays. In response, Plaintiff alleges that Emma Colon requested that she "change physicians." (See Docket No. 37-2 at 14, l. 22.) Plaintiff also testifies that on July 27, 2007, the day she called Colon to tell her she would be absent, she told her that "if this was what I had had during previous pregnancies, that then the most sure thing was that I would be absent for several days." (See Docket No. 37-2 at 17, l. 9-12.) Plaintiff avers that this statement, coupled with the evidence of her previous absences for pregnancy related issues, could lead the jury to infer that Scotiabank did not want that to happen again. Plaintiff also contends that the jury may infer pretext from Defendants' adamance that Plaintiff was absent without authorization or notification, which is contrary to Plaintiff's sworn testimony in which she recites the numerous occasions she called and provided information both notifying and justifying her absences. (See Docket No. 37-2 at 16, l. 23-25; at 17, l. 1-2, 6-12, 15-17; at 25 l. 1-12.) Finally, in their sworn testimonies, Colon, Rosario and Rodriguez state that they did not know of Plaintiff's pregnancy until 2009. (See Docket Nos. 37-4 at 7, l. 10-11; 37-6 at 3, l. 8; 37-5 at 7, l. 2-3.) However, these assertions contradict the sworn testimony of Ayala, who testified that the issue of

**Civil No. 08-2326(GAG)**                                11

Plaintiff's pregnancy was discussed with Colon, Rosario, and Rodriguez on August 13, 2007.[2] (See Docket No. 37-7 at 5, l. 19-25, at 6, l. 1-9.) Plaintiff avers that the inconsistencies amongst these testimonies could lead a reasonable jury to infer pretext on the part of her employer.

In considering all the evidence presented by Plaintiff, the court finds that a reasonable jury could infer that Scotiabank employees acted with discriminatory intent when discharging Plaintiff from her teller position. Because a reasonable jury could credit the testimony of Plaintiff over that of her superiors, they could also infer that Defendants' adamance that Plaintiff's absences were unjustified – i.e. the stated reason for her discharge – was pretextual and used to obscure underlying discriminatory intent. See Che, 342 F.3d at 39 (affirming denial of summary judgment on issue of pretext when "the jury could have concluded that [the plaintiff] was not insubordinate to begin with and that the [defendant's] stated reason for the [adverse employment action] was contrived."). While such a finding is not necessarily imputed by the evidence, it is not unreasonable to think that such a conclusion could be reached when considering the evidence presented by both parties. As previously stated, this task is prescribed to the jury and not the judge. See id.. Therefore, the court **DENIES** Defendants' motion for summary judgment as to Plaintiff's claim of pregnancy discrimination under Title VII.

---

[2] Defendants efforts to explain these contradictions in their reply (Docket No. 43-2) do not convince the court to overlook the glaring inconsistencies referenced by Plaintiff. While Defendants contend that these contradictions are merely misinterpretations of the testimonies, the record fails to reflect this assertion. When asked at her deposition what she talked to Colon, Rosario, and Rodriguez about when she spoke to them on August 13, 2007, the following exchange ensued:

> Q. And it was discussed that "Ingrid was pregnant, what are we going to do", is that correct?
> A. No, we talked to them to find out if they knew that Ingrid was pregnant, not to find out what we were going to do.
> Q. So the answer is "we didn't know, but now we know it", is that correct?
> A. Exactly, we did not know, "you are informing us right now".

Docket No. 37-7 at 6, l. 4-9.

**Civil No. 08-2326(GAG)**                                              12

  B.  *Puerto Rico Law No. 3*

  Scotiabank also seeks summary judgment as to Plaintiff's supplemental claim pursuant to Puerto Rico Law No. 3, known as the Working Mothers' Law.  Law No. 3 expressly provides that an employer cannot discharge a pregnant woman without just cause.  P.R. Laws Ann. tit. 29, § 469.  The statute goes on to further recognize that a decrease in work performance due to pregnancy is not considered just cause.  Id.  "This decrease in work performance means, not only the decrease experienced in quantitative terms but also the one which affects the quality of the work done."  See Soc. de Gananciales v. Centro Grafico, 144 D.P.R. 952 (D.P.R. 1998).  When a Plaintiff successfully states a claim under Law No. 3 it creates a rebuttable presumption that the discharge was not justified.  See id.  It is then the employer's duty to persuade the trier of fact that the discharge was not unjustified.  See id.

  In their motion for summary judgment, Defendants assert that this presumption does not apply as Scotiabank did not have knowledge of Plaintiff's pregnancy, and therefore, cannot assert that she was unjustly terminated.  However, as previously stated, the court finds that Plaintiff has provided sufficient evidence to create an issue of material fact with regard to the question of Defendants' knowledge of her pregnancy.  Therefore, as the question of whether or not Plaintiff's employer has stated a valid justification for her dismissal must be submitted to the jury, summary judgment is **DENIED** with respect to Plaintiff's claim under Law No. 3.

  C.  *Claims Under Articles 1802 & 1803 of the Puerto Rico Civil Code*

  Plaintiff also brings claims under Articles 1802 and 1803 of the Puerto Rico Civil Code.  With respect to these claims, this court has held that

> [T]o the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, [s]he is barred from using that same conduct to also bring a claim under Article 1802. An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked.

Rosario v. McConnell Valdes, 2008 WL 509204, *2 (D.P.R. 2008); see also Suarez v. Venator Group, Inc., 2009 WL 4015655, *3-4 (D.P.R. 2009); Peña Alcantara v. Correctional Health Services, Corp., 2009 WL 890467, *5-6 (D.P.R. 2009).  Plaintiff bases her claims under Articles 1802 and

**Civil No. 08-2326(GAG)**                              13

1803 on the same conduct that supports her pregnancy discrimination claim under Law No. 3. As Plaintiff has not stated independent grounds on which to bring these tort claims, the court **DISMISSES** Plaintiff's claims under Articles 1802 and 1803 with prejudice.

### III.   Conclusion

For the foregoing reasons, the court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment.

**SO ORDERED**

In San Juan, Puerto Rico this 11th day of May, 2010.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge